**UNITED STATES of America, Appellee,**

**v.**

**Paul E. MARTIN, James A. Gillespie.**

**Appeal of Paul E. MARTIN.**

**No. 85–3414.**

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1986.

Decided April 16, 1986.

---

Thomas A. Livingston (argued), Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellant.

Paul J. Brysh, U.S. Atty., Pittsburgh, Pa., for appellee.

* Honorable Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation.

1. 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom; any such matter or thing, or knowingly causes to be delivered by mail according

Before HUNTER and GARTH, Circuit Judges, and FISHER, District Judge.*

## OPINION OF THE COURT

GARTH, Circuit Judge:

### I.

In an indictment returned April 2, 1985, defendant-appellant Paul E. Martin was charged with 34 counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342.[1] The indictment alleged that Martin, a sales representative and territory manager for Travenol Laboratories, Inc., a supplier of health care products to hospitals, had engaged in a scheme to defraud whereby he and a co-conspirator stole products from Travenol customers and resold them to various hospitals through a fictitious entity known as Kramer Pharmaceuticals, Inc.

Pursuant to a plea agreement entered into with the United States Attorney, Martin agreed to plead guilty to counts three (3) and thirty-four (34) of the indictment. Count three (3) alleged that on April 25, 1980, Martin caused a Raleigh General Hospital check in the amount of $3,234 to be sent by that hospital to Kramer Pharmaceutical through the United States mail for the purpose of executing the scheme to defraud. Count 34 alleged that on October 10, 1983, Martin caused a Latrobe Area

to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1342 provides:

Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Hospital check in the amount of $13,200 to be sent by the hospital to Kramer Pharmaceutical by the United States mail for the purpose of executing the scheme to defraud.

The plea agreement provided that Martin's sentence on both counts would not exceed a ten-year prison term, a $2,000 fine, or both, as well as restitution in an amount to be determined by the district court. Martin further agreed

to make himself available to federal authorities for questioning concerning his knowledge of and participation in a scheme to defraud Travenol Laboratories, Inc., and various hospitals through the fraudulent acquisition, sale and distribution of pharmaceutical and other hospital supplies under the name of Kramer Pharmaceutical, and agrees to answer all questions completely and truthfully.

It is understood that Mr. Martin will be required to provide information not only about himself, but about other individuals and entities as well, and that his cooperation will include giving complete. and truthful testimony before any federal grand jury, petit jury or court considering such matters. Furthermore, Mr. Martin agrees to provide all relevant records which are requested by federal authorities and which are in his custody or control or will otherwise identify those records relating to the scheme to defraud outlined above.

App. 22–23.

In return for Martin's guilty plea, the United States agreed not to prosecute Martin for any other violations arising out of the scheme to defraud and to seek dismissal of the remaining counts of the indictment.

Further, the government promised that:

The United States shall advise the Court at the time of sentence of the full nature and extent of Paul E. Martin's cooperation in this and related matters, if any.[2]

App. 24.

Martin testified for the United States at the jury trial of Martin's co-defendant, James Gillespie, before the same judge who sat at Martin's change of plea hearing and who later delivered Martin's sentence. However, at Martin's sentencing, the government did not inform the court of the extent of Martin's cooperation with federal authorities, as provided by the plea agreement.

The government submitted evidence that Travenol should receive $213,759.92 from Martin as restitution under the Victim and Witness Protection Act of 1982.[3] An analysis of various bank accounts in the name of Kramer pharmaceutical prepared by the Probation Service as part of the government's pre-sentence report concluded that as a result of the mail fraud scheme Martin had received $271,574.12 before January 1, 1983 and $102,609.94 after January 1, 1983. While taking no position on the "amount of the claims" due Travenol, Martin contended that legally he should only be required to provide restitution for the losses resulting from his conviction on count 34, or $13,200.[4]

2. At Martin's June 4, 1985 change of plea hearing, a copy of the plea agreement letter was marked as a government exhibit and made a part of the record. App. 36. At that hearing, Martin testified that the agreement provided that he would be "cooperating with the government from this point on." The government attorney stated that "at the time of sentencing ... the government will bring to the attention of the Court any cooperation that Mr. Martin renders between now and then." App. 35.

3. Travenol's losses consisted of $207,663.88 it had reimbursed various hospitals victimized by Martin's fraudulent scheme and $6,096.03 Travenol spent to conduct an independent investigation of Martin's scheme.

4. Martin provided evidence as to his ability to make restitution, testifying that he owned 25% of a Dairy Queen, for which he paid the entire purchase price of $82,000; a commercial building appraised at $38,500, subject to an $8,000 mortgage; a house worth $30,000 that he had later sold for $5,000 cash and a mortgage resulting in payments to Martin of $179.01/month for two to three years; and a personal residence valued at $80,000, subject to a $32,000 mortgage.

The district court sentenced Martin to consecutive prison terms of five years on count 3 and three years on count 34. Martin was directed to make restitution of $213,759.91, the full amount of injury allegedly suffered by Travenol as a result of Martin's entire scheme to defraud. Martin was to make such restitution by providing a lump sum payment of $113,759.91 on January 20, 1986, followed by monthly installments of $2,000 for a period of four years and two months commencing after Martin's release from prison. In requiring restitution, the district court made no express findings of fact as to either the amount due Travenol or Martin's ability to pay. Martin filed a timely notice of appeal from the district court's July 19, 1985 order of sentence and commitment.

## II.

■ In the plea agreement entered into between Martin and the government, Martin promised to cooperate with federal authorities in the prosecution of others involved in the Travenol fraud scheme. In exchange for this cooperation, the government promised to advise the sentencing court of the nature and extent of Martin's cooperation. It is undisputed that Martin fulfilled his obligation to cooperate by providing information to government officials and testifying at Gillespie's trial. It is likewise undisputed that the government did not fulfill its obligation to inform the sentencing court of Martin's cooperation.

The Supreme Court has held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). This court has held that "it is the rule of this Circuit that the Government must adhere strictly to the terms of the bargains it strikes with defendants." *United States v. Miller,* 565 F.2d 1273, 1274 (3d Cir.1977). *See also United States v. Baylin,* 696 F.2d 1030, 1044 (3d Cir.1982) ("integrity in the sentencing process de-

mands that the Government be scrupulous in honoring its agreement"). The Eighth Circuit has held that the government's failure to inform the court of a defendant's cooperation as provided by a plea agreement constituted a breach of that agreement. *United States v. Williams,* 656 F.2d 357, 359 (8th Cir.1981).

Here, the government concedes it breached the plea agreement, but contends that the breach constituted harmless error since Martin's sentencing judge was the same judge who presided at Martin's co-defendant's trial at which Martin testified. Thus, the government contends that the sentencing judge in fact knew of Martin's cooperation despite the government's failure to live up to its bargain.

However, the Supreme Court has made clear that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the ... courts for further consideration." *Santobello,* 404 U.S. at 262–263, 92 S.Ct. at 499. Since the government breached the plea agreement, Martin's sentence must be vacated and the case remanded to the district court for it to determine in its discretion whether to "conform the sentence to the provisions of the plea bargain or allow withdrawal of the plea." *See United States v. American Bag & Paper Corp.,* 609 F.2d 1066, 1068 (3d Cir.1979). *See also Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 499.

## III.

■ As part of Martin's sentence, the district court ordered Martin to pay Travenol restitution for the full amount of losses it allegedly suffered as a result of Martin's overall scheme to defraud. The district court ordered restitution pursuant to the provisions of the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579

and 3580.[5] The restitution ordered covered losses which were the subject of those counts of the indictment which were either dismissed or allegedly referred to actions which were taken before January 1, 1983, the effective date of the Victim and Witness Protection Act.

Martin argues that since he pled guilty to only one "offense," a single count of mail fraud, which took place after January 1, 1983 (Count 34), he should only be required to pay restitution to the extent of the loss caused by that one "offense," or $13,200. To Martin, the *improper use of the mails* is the offense penalized by 18 U.S.C. § 1341 and § 1342, not the *scheme to defraud* furthered by the improper use of the mails. Thus, Martin argues he may be ordered to make restitution only for the losses caused Travenol by the discreet act of mail fraud to which he pled guilty—i.e., causing a check in the amount of $13,-200.00 to be mailed to Kramer Pharmaceutical on October 10, 1983 for the purpose of executing a scheme to defraud.

The government contends, on the other hand, that the "offense" involved in a conviction under 18 U.S.C. § 1341 is not merely the mailing, but rather includes *both* the mailing and the entire scheme to defraud which was furthered by that mailing. The government argues that the emphasis on misuse of the mails in the mail fraud statute is merely the means whereby federal jurisdiction may be asserted over the offense. Thus, the government claims that the sentencing court may properly order Martin to pay restitution for losses caused by the entire fraudulent scheme furthered by the single act of mailing to which Martin admitted when he pled guilty to Count 34.

This court's decision in *United States v. Woods,* 775 F.2d 82 (3d Cir.1985) supports the government's position. There, the court stated that:

> The offense is a scheme to defraud, and each count is simply an act in furtherance of the unitary scheme; therefore, establishing that a single count caused a specific loss would be difficult. It is the overall scheme that is central to all the counts and gives rise to the victims' financial loss. We find merit in this argument.... In the circumstances here, the district court had authority to direct restitution to the victims for the total remaining amount of loss caused by the defendants' illegal scheme, and therefore it did not abuse its discretion in making such an order.

775 F.2d at 88.

On this appeal, we need not address the issue of whether restitution may be ordered for the entire loss suffered from a fraudulent scheme which included numerous acts of mail fraud where in fact the defendant either pleaded to or was convicted of just one such act. That issue need not be decided on this appeal because restitution may be ordered under the Victim and Witness Protection Act only for offenses committed *after* January 1, 1983, the date the Act went into effect. Victim

---

5. The Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 and 3580, provides in relevant part:

§ 3579. Order of restitution

(a)(1) The court, when sentencing a defendant convicted of an offense under this title ... may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense.

§ 3580. Procedure for issuing order of restitution

(a) The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

*     *     *     *     *     *

(d) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the defense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

and Witness Protection Act of 1982, Pub.L. No. 97–291, § 9(b)(2), 96 Stat. 1248 (1982); *see United States v. Forzese*, 756 F.2d 217, 222 (1st Cir.1985). Thus, while a scheme to defraud furthered by separate mailings may properly be viewed as one unitary offense, the losses which resulted therefrom must be separately identified as those which occurred before and those which occurred after January 1, 1983 for purposes of restitution under the Victim and Witness Protection Act.[6]

Accordingly, any sentence imposed upon Martin under the Victim and Witness Protection Act, 18 U.S.C. §§ 3579–3580, must be limited to the losses suffered by Travenol after January 1, 1983. If Martin is resentenced, the government may then present evidence as to the amount of losses suffered by Travenol caused by Martin's mail fraud scheme but limited to Travenol's losses which occurred after January 1, 1983. If the district court finds that Travenol suffered losses after January 1, 1983 in addition to the $13,200 alleged in Count 34. Martin may be ordered to pay restitution for all such losses under the Victim and Witness Protection Act as we have construed the "unitary scheme" doctrine of *Woods*. Thus, restitution need not be limited to $13,200, the specific amount alleged in Count 34. Of course, if the government can not show by a preponderance of the evidence that Travenol suffered any loss after January 1, 1983 other than the amount alleged in Count 34, restitution under the Victim and Witness Protection Act may not be ordered in excess of $13,200.

## IV.

Because Martin's plea was flawed by the government's failure to inform the district court of Martin's cooperation, Martin's sentence must be vacated and the case remanded to the district court for further proceedings. On remand, the district court may, in its discretion, either permit adherence and compliance by the government to the terms of the original plea agreement, or the district court may, at its option, permit Martin to withdraw his plea. *See United States v. American Bag & Paper Corp. supra.* If Martin, whether after plea or trial, is resentenced, the district court must, if it intends to require restitution, proceed in the manner consistent with the foregoing discussion. In doing so, the district court should make appropriate findings of fact on the record as to the amount of losses suffered by Travenol and Martin's ability to pay as required by *United States v. Palma*, 760 F.2d 475 (3d Cir.1985).

Martin's sentence will be vacated and the case remanded to the district court for proceedings consistent with this opinion.

---

**6.** The district court could, if it so chose, order restitution for all losses suffered by Travenol, both before and after January 1, 1983, as a condition of probation under 18 U.S.C. § 3651. However, in that event, restitution would not be a part of the sentence for conviction of the crime, as it would be under the Victim and Witness Protection Act. *See United States v.* *Forzese*, 756 F.2d 217, 222 (1st Cir.1985); *see also United States v. Ferrera*, 746 F.2d 908, 913 (1st Cir.1984) (since 18 U.S.C. §§ 3579–3580 apply only to offenses occurring after January 1, 1983, any award of restitution as a condition of probation necessarily rests on the probation statute 18 U.S.C., § 3651).