UNITED STATES of America, Appellee,

v.

Yussel BRODY, a/k/a "Joseph Brody," Defendant-Appellant.

No. 309, Docket 86–1316.

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1986.

Decided Dec. 24, 1986.

---

Nathan Z. Dershowitz, New York City (Victoria B. Eiger, Dershowitz & Eiger, New York City, of counsel), for defendant-appellant.

Peter A. Norling, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., Ephraim Savitt, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before MESKILL, MINER and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

Yussel Brody, a/k/a Joseph Brody, appeals from an order of the United States District Court for the Eastern District of New York, Bartels, J., denying his motion for sentence reduction brought pursuant to Rule 35 of the Federal Rules of Criminal Procedure and partially denying his request for amendment of his presentence report.

We affirm.

## BACKGROUND

On October 24, 1985, Brody pled guilty before Judge Bartels to a one count indictment charging Brody with violating 18 U.S.C. § 371 (1982) by conspiring to defraud credit card issuing banks insured by the federal government.[1] Brody received the maximum sentence of five years.

---

1. The indictment charged Brody with knowingly engaging in a conspiracy to commit fraud in connection with the use of counterfeit credit cards in violation of 18 U.S.C. § 371. J.App. at 6–8. Brody claims that our previous determination that "it was not a crime to print, sell, or otherwise distribute unembossed plastic sheets in the form of credit cards" at the time of Brody's conduct, *United States v. Zambrano*, 776 F.2d 1091, 1094 (2d Cir.1985), robbed the district court and this Court of jurisdiction because the challenged conduct was not a federal offense at the time of Brody's indictment.

The indictment arose out of an investigation set forth in detail in *United States v. Zambrano*, 776 F.2d 1091 (2d Cir.1985), involving an undercover operation conducted from a bicycle shop in Queens, New York by federal agents. The agents and their informants took over a massive counterfeit credit card franchise run by Salvatore Cardella, thereafter embossing the counterfeit cards provided by Cardella and Fiorentino Zambrano and selling them to Cardella's customers. Brody was one of Cardella's customers, purchasing hundreds of cards as well as providing Cardella with carbons of credit card transaction slips as a source of account numbers which Cardella would emboss on the cards.

Brody pled guilty pursuant to a plea bargaining agreement whereby he agreed to assist the government in unrelated investigations in exchange for the government's promise to inform the sentencing judge of the nature and full extent of his cooperation. On the day before sentencing, the prosecutor informed Judge Bartels that Brody had provided the name of an insurance agent in the business of defrauding insurance companies by claiming fictitious burglary losses, but that this information had no prosecutorial value.

Brody's Rule 35 motion requested correction of certain alleged errors in the presentence report as well as reduction of his sentence. Brody had not raised the alleged errors at the earlier sentencing hearing. Judge Bartels nonetheless amended the presentence report by reducing the victim impact estimate from losses of $2,000 per card to losses of $1,000 per card, a figure recommended by the government.

It is clear from the indictment's language, however, that the purchases of the counterfeit cards were not the indictment's substantive charge. The purchases simply form the factual predicate for the charged *conspiracy* in violation of § 371, which was a federal crime long before Brody's indictment. The indictment, therefore, charged Brody with a federal offense and vested jurisdiction in the federal courts. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (indictment need only state the essential elements and facts of the

Brody also alleged that the prosecutor breached the plea agreement by failing to inform Judge Bartels prior to the sentencing hearing of the full extent of Brody's cooperation. Brody's Rule 35 motion informed Judge Bartels that, in addition to the name of the insurance agent, Brody had provided the government with the names of two individuals engaged in automobile insurance fraud. In opposing Brody's Rule 35 motion, the prosecutor admitted his omission but noted that this additional information furnished to the government by Brody also lacked prosecutorial value, apparently due to Brody's refusal to act as an undercover operative or to assist the government in infiltrating the allegedly fraudulent schemes.

Judge Bartels denied Brody's request for a reduced sentence on the grounds that Brody had pled guilty to a conspiracy involving hundreds of fraudulent credit cards and had two prior federal fraud convictions and one prior state conviction for possession of stolen property. Judge Bartels emphasized that the government's mischaracterization of Brody's cooperation "[was] *irrelevant* in the determination of Brody's sentence." J.App. at 78.

## DISCUSSION

### A. *Correction of the Presentence Report*

A Rule 35 motion provides only for reduction of sentence, not for correction of a presentence report. Fed.R.Crim.P. 35; *see Simmons v. United States*, 777 F.2d 660, 661–62 (11th Cir.1985). Judge Bartels treated Brody's request for correction of the report as a motion under Rule 32 of the Federal Rules of Criminal Procedure, which requires a sentencing court to make

substantive charges, inform the defendant of those charges and enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense); *Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1084, 1 L.Ed.2d 1356 (1957) (factual predicate and overt acts alleged in indictment need not constitute criminal conduct; "function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work'") (citation omitted).

a finding as to the accuracy of each controverted matter in the presentence report or to determine that no reliance was placed on the challenged proposition at the time of sentencing. Fed.R.Crim.P. 32(c)(3)(D); *United States v. Ursillo*, 786 F.2d 66, 68–69 (2d Cir.1986).

■ Brody had access to the presentence report for at least one month before sentencing, a time period clearly sufficient to inspect the report for errors. At sentencing, despite Judge Bartels' prodding, Brody failed to raise the issues dealt with on this appeal—the accuracy of the presentence report's estimate of the victim impact per card and the prosecutor's alleged mischaracterization of Brody's cooperation pursuant to the plea bargaining agreement. Therefore, Judge Bartels was not obligated under Rule 32 to make findings as to these issues at sentencing.

Brody raised these issues for the first time in his subsequent Rule 35 motion. Treating this submission as a timely Rule 32 request, Judge Bartels responded by reducing the victim impact estimate as mentioned above and determined that Brody's cooperation was irrelevant to sentencing. As such, Brody received all he could have hoped for in this regard. Thus here, as in *Ursillo*, "we need not decide ... whether Rule 32 of itself empowers a federal district court ... to consider a collateral attack on the accuracy of the presentence report." 786 F.2d at 71.

■ The other error raised on this appeal—Brody's claim that the presentence report incorrectly states the number of credit cards involved in Brody's fraud—was waived because it was not brought to Judge Bartels' attention at sentencing or in the Rule 35 motion, and the alleged miscalculation would not constitute plain error under Rule 52(b). *United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir.1985).

**B.** *Reduction of Sentence*

1. *The Victim Impact Estimate*

■ On appeal, Brody requests resentencing on the ground that the victim impact per card estimate is too unreliable to be considered in sentencing. Brody's Rule 35 motion, however, challenged the estimate only in the context of requesting correction of the presentence report; he based his resentencing request on other, unrelated grounds. J.App. at 56–57. We would hear Brody's resentencing request on this basis if he had raised the point below in some context related to resentencing. *United States v. Januszewski*, 777 F.2d 108, 109–10 (2d Cir.1985). Brody did not, and, therefore, waived his right to raise the issue on appeal.

2. *Violation of the Plea Agreement*

■ Brody claims that the prosecutor breached the plea bargaining agreement by failing to inform the sentencing court of the full extent of his cooperation and that resentencing is required. Although this contention was not raised at the sentencing hearing, it was raised in Brody's Rule 35 motion below. We will consider it on appeal. *See Paradiso v. United States*, 689 F.2d 28, 30 (2d Cir.1982) (per curiam) ("defendant's claim that his plea agreement was violated is not waived by his failure to raise the issue at sentencing or in a subsequent Rule 35 motion") (citing *United States v. Corsentino*, 685 F.2d 48 (2d Cir. 1982)), *cert. denied*, 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983).

■ The prosecutor failed to live up to his obligation under the plea agreement; the information relating to automobile insurance fraud was not communicated to Judge Bartels before sentencing. The prosecutor thereby breached the agreement. *United States v. Martin*, 788 F.2d 184, 187 (3d Cir.1986). The remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement. *United States v. Abbamonte*, 759 F.2d 1065, 1071–72 (2d Cir.1985) (interpreting *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)); *United States v. Williams*, 656 F.2d 357, 359 (8th Cir.1981) (same). Brody does not seek to withdraw his guilty plea; he requests spe-

cific performance of the agreement in the form of resentencing before a different judge.

A breach, however, does not automatically require resentencing. The nature of the remedy varies with the nature of the broken promise and the facts of each particular case. In *United States v. Corsentino*, 685 F.2d 48 (2d Cir.1982), we ordered resentencing in order to remedy a violation by a prosecutor who argued for a harsh sentence after he had agreed "to take no position at sentencing." *Id.* at 49–52. *Accord United States v. Carbone*, 739 F.2d 45, 46–47 (2d Cir.1984) (prosecutor, by arguing against split sentence, breached plea agreement to take no position at sentencing; resentencing required). We require resentencing where the violation of an agreement goes to the very "essence" of the plea agreement. *United States v. Stolon*, 561 F.Supp. 63, 64–66 (E.D.N.Y.1983). Indeed, the egregious nature of such a breach requires that we order the additional step of reassigning the proceedings to a different sentencing judge. *Corsentino*, 685 F.2d at 52. *See Carbone*, 739 F.2d at 47–48 (resentencing required despite fact that sentencing judge not influenced by government's argument for harsh sentence).

Here, in contrast, Brody's Rule 35 motion cured any possible prejudicial effect caused by the prosecutor's breach. Brody received specific performance of his plea agreement, albeit some time after the breach, by way of his Rule 35 motion. At that time, Judge Bartels was presented with the additional facts of Brody's cooperation, which he considered and rejected as irrelevant in the course of exercising the broad discretion accorded all sentencing judges. *See United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). The terms of Brody's bargain, therefore, ultimately were satisfied. *See Williams*, 656 F.2d at 358–59 (prosecutor's breach of plea agreement promise to inform sentencing court of full extent of defendant's cooperation remedied by subsequent Rule 35 proceeding through which court informed of full extent of defendant's cooperation; specific performance obtained and resentencing not required).

Pursuant to the terms of the plea agreement, moreover, the government informed Judge Bartels, at both the sentencing hearing and the Rule 35 proceeding, that *none* of Brody's cooperation had *any* prosecutorial value. Brody made his cooperation unhelpful by refusing to assist the government in investigating the information he offered. In the context of Brody's two prior federal fraud convictions and one prior state conviction for possession of stolen property, it is not surprising that Judge Bartels refused to reduce the sentence. Indeed, Brody's counsel concedes the reasonableness of the sentence.

In light of the technical nature of the breach and the fact that Brody suffered no meaningful detriment, we affirm the district court's order. *See Paradiso*, 689 F.2d at 29–31 (technical nature of plea agreement violation and absence of resulting injury to defendant render inappropriate vacatur of sentence and withdrawal of guilty plea); *Williams*, 656 F.2d at 359 (defendant suffered no meaningful injury from prosecutor's breach and specific performance obtained in Rule 35 proceeding; resentencing denied). Resentencing Brody would further no interest identified in our precedents and waste the resources of an already overworked district court.

Our refusal to order resentencing, however, does not end the matter. The Assistant United States Attorney initially failed to honor his obligation arising out of the plea agreement, providing ammunition for Brody's Rule 35 attack and precipitating this appeal. We must, therefore, repeat our admonition first articulated in *Januszewski*, 777 F.2d at 111, that the government take much greater care in fulfilling its responsibilities where plea agreements are involved.

The order of the district court is affirmed.