UNITED STATES of America

v.

Carlos TORRES, Appellant.

No. 90–5545.

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1991.

Decided March 1, 1991.

As Amended March 22, 1991.

Chester M. Keller (argued), Asst. Federal Public Defender, Newark, N.J., for appellant.

Michael Chertoff, U.S. Atty., Leslie F. Schwartz (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

Crummy, Del Deo Dolan, Griffinger & Vecchione, P.C. (Lawrence S. Lustberg, of counsel), Newark, N.J., for amicus curiae Ass'n of Criminal Defense Lawyers of N.J.

Before STAPLETON, GREENBERG, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we decide that a kilogram of cocaine seized in violation of the Fourth Amendment and suppressed for that reason was nevertheless properly considered in determining the applicable sentence under the Sentencing Guidelines. Because the plea bargain was based on a stipulation that a lesser amount of the drug was to be used for computation of the sentencing range, we will remand for appropriate relief.

Based on an informant's tip, a number of DEA agents conducted a warrantless search of an apartment in Cliffside Park, New Jersey, on July 1, 1989, and found 198 grams of cocaine. Within seconds after their entry into the apartment, an automobile in which the defendant was a passenger, arrived on the scene. Some of the agents left the apartment, went to the car and arrested the occupants. A brick of cocaine weighing approximately one kilogram was found in the automobile.

Defendant filed a motion for suppression. After a hearing, the district court ordered that evidence of the kilogram of cocaine taken from the automobile be excluded, but denied the motion as to the 198 grams taken from the apartment.

Defendant then agreed to plead guilty to a superseding information charging one count of possession with intent to distribute less than 500 grams of cocaine. In a letter setting forth the terms of the agreement, the government stipulated that "[t]he amount of cocaine involved in the offense for purposes of calculating the applicable sentencing guideline range is 100 to 200 grams." In addition, the letter stated that the stipulation did not bind the court and was based on information possessed by the government at that time.

The presentence report prepared by the probation officer suggested that the kilogram of cocaine found in the car be considered in sentencing as evidence of relevant conduct. The district judge accepted this recommendation and, over the objections of both defendant and prosecutor, took the kilogram into account in calculating the appropriate sentencing guideline range. He also denied the defendant's request to withdraw his guilty plea.

This appeal presents two issues: (1) whether the exclusionary rule as applied to Fourth Amendment violations precludes consideration of suppressed evidence in sentencing determinations and (2) whether in the circumstances here the defendant should be permitted to withdraw his plea.

## I.

The exclusionary rule serves as a remedy for various constitutional violations, but on differing rationales. When the Fifth Amendment is implicated, as in

the case of a coerced or otherwise dubious confession, suppression is invoked primarily on the theory that the evidence is tainted by unreliability and a conviction obtained by its use might be suspect.

When the violation implicates the Fourth Amendment, however, different considerations come into play. That an unlawful search and seizure has occurred does not diminish the probative value of the illegally seized evidence in any way. Indeed, in most cases where suppression is granted, the evidence is quite trustworthy.

In *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the Supreme Court prohibited the use of evidence seized in violation of the Fourth Amendment to secure a conviction. The Court has since explained that the rule of exclusion is based on an effort to deter unlawful police activity as well as a recognition of judicial integrity in the admission of evidence. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Nevertheless, these concerns must be weighed against the costs to the administration of justice in permitting obviously guilty defendants to be acquitted. "[U]nbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." *United States v. Payner*, 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980). Cardozo's pithy remonstrance, "The criminal is to go free because the constable has blundered," *People v. Defore*, 242 N.Y. 13, 150 N.E. 585, 587, *cert. denied*, 270 U.S. 657, 46 S.Ct. 353, 70 L.Ed. 784 (1926), has not lost its sting.

The Supreme Court, therefore, has veered from an absolutist approach and instead has restricted the rule's application "to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). In *United States v. Janis*, 428 U.S. 433, 447–54, 96 S.Ct. 3021, 3028–32, 49 L.Ed.2d 1046 (1976), the Court adhered to this criteria, weighing the likely deterrent effect and the cost to society in expanding the rule. The Court concluded that the deterrent effect would be marginal and that extension of the rule was unjustified. *Id.* at 454, 96 S.Ct. at 3032.

*Calandra* made it clear that the exclusionary rule was a judicially created remedy, rather than a constitutional right and that it did not "proscribe the use of illegally seized evidence in all proceedings or against all persons." 414 U.S. at 348, 94 S.Ct. at 620. It does not apply, for example, to grand jury proceedings, *Id.* at 351–52, 94 S.Ct. at 621–22, or deportation proceedings. *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984). Evidence illegally seized by state officials may be used in a federal civil proceeding, *Janis*, 428 U.S. at 454, 96 S.Ct. at 3032, and evidence obtained in violation of the Fourth Amendment may be used for impeachment, *United States v. Havens*, 446 U.S. 620, 627–28, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980).

Moreover, evidence procured by an officer acting in objective good faith will not be suppressed even though the warrant was defective. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). A state prisoner may not be granted federal habeas corpus relief for an unconstitutional search where the state has provided for full and fair litigation of the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). "In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force." *Id.* at 494–95, 96 S.Ct. at 3052–53.[1]

---

1. The literature on the Fourth Amendment is too voluminous to catalogue in this opinion. The following list represents but a small sample. 1 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 1.3, at 49–51 (2d ed. 1987); Burger, *Who Will Watch the Watchman?*, 14 Am.U.L.Rev. 1 (1964); Dripps, *Living with Leon*, 95 Yale L.J. 906 (1986); Heffernan, *On Justifying Fourth Amendment Exclusion*, 1989 Wis.L.Rev. 1193, 1244–1247; Meltzer, *Deterring Constitutional Violations By Law Enforcement Officials: Plaintiffs And Defendants As Private*

■ These cautionary admonitions on indiscriminate invocation of the exclusionary rule contrast with the traditional liberality granted a sentencing court in receiving evidence bearing on an appropriate sentence. Both before and since the original thirteen colonies became a nation, "a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed." *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). In deciding upon a proper sentence, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

■ In its opinion in *United States v. Baylin*, 696 F.2d 1030, 1039 (3d Cir.1982), this Court cited 18 U.S.C. § 3577 in concluding that it is "permissible for a sentencing judge to consider information that would be inadmissible for the purpose of determining guilt." This provision was retained by Congress when it adopted the Sentencing Reform Act of 1984 as 18 U.S.C. § 3661 and reads: "No limitations shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See United States v. Bruno*, 897 F.2d 691, 693 (3d Cir.1990). Implicit in the broad discretion granted the sentencing judge, however, is the necessity that the information be reliable and not bear on such impermissible factors as race, religion, national origin, or be the result of coerced statements, uncounseled convictions and the like.

The Sentencing Guidelines preserve the liberality granted the sentencing judge. Section 6A1.3 provides: "In resolving any reasonable dispute concerning a factor important to the sentencing determination,

the court may consider relevant information without regard to its admissibility ... provided that the information has sufficient indicia of reliability to support its probable accuracy." *See also United States v. Ryan*, 866 F.2d 604, 609 (3d Cir.1989) (Guidelines permit court to consider evidence affecting counts of which defendant was acquitted).

The Sentencing Commission was faced with deciding whether a guideline range would be determined according to actual offense conduct or solely on conduct charged in the indictment. The relevant conduct provisions, adopted in section 1B1.-3, reflect the decision of the Commission to consider, to some degree, the actual conduct of the offense. *See* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 3 S.C. L.Rev. 495 (1990).

Under the Guidelines, the quantity of illegal drugs is a particularly important factor in arriving at an appropriate sentence. Section 1B1.3(a)(2) provides that relevant conduct shall be considered in calculating the quantity involved in the offense including "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Consequently, in such cases the sentencing court considers the actual offense conduct of the defendant.

In *United States v. Williams*, 917 F.2d 112 (3d Cir.1990), we concluded that a sentencing court may consider drug quantities outside the conviction count conduct. There, we upheld consideration of the amount of drugs reasonably foreseeable to be handled in connection with the conspiracy, rather than only the amount stated in the charge to which the defendant pleaded guilty. Similarly, in *United States v. Blanco*, 888 F.2d 907 (1st Cir.1989), the Court held that additional quantities of drugs included in counts which were dropped as part of a plea bargain, nevertheless, may be considered for sentencing.

*Attorneys General,* 88 Colum.L.Rev. 247, 267–78 (1988); Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U.Chi.L.Rev. 665 (1970);

White, *Forgotten Points in the "Exclusionary Rule" Debate,* 81 Mich.L.Rev. 1273 (1983).

■ Faced with two strong currents in the law, one urging caution in invoking the exclusionary rule in Fourth Amendment cases, and the other permitting broad discretion in receiving evidence of conduct relevant to sentencing, we have no difficulty in upholding the sentencing judge's consideration of the suppressed evidence here. The desirability of reaching an appropriate decision in sentencing outweighs what little deterrent effect may be present. *See United States v. Graves*, 785 F.2d 870 (10th Cir.1986); *United States v. Larios*, 640 F.2d 938 (9th Cir.1981); *United States v. Lee*, 540 F.2d 1205 (4th Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). *But see* 1 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 1.6(f) (2d ed. 1987) (defendant who receives enhanced sentence as a consequence of illegally seized evidence is not a likely candidate for rehabilitation).

We need not address the situation present in *Verdugo v. United States*, 402 F.2d 599, 610–13 (9th Cir.1968), *cert. denied*, 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), where the record showed that evidence was illegally seized for the purpose of enhancing the sentence. That issue is not before the Court in this appeal. *See United States v. Schipani*, 435 F.2d 26, 28 n. 1 (2d Cir.1970).

Consideration of the suppressed evidence is consistent with the caselaw on the exclusionary rule and follows the well-established practice of receiving evidence relevant to sentencing from a broad spectrum of sources. We hold, therefore, that evidence suppressed as in violation of the Fourth Amendment may be considered in determining appropriate guideline ranges.

## II.

Having decided that the sentencing judge properly received the evidence, we now consider whether he should have granted the defendant's motion to withdraw his plea.

During the plea colloquy, the Assistant United States Attorney, representing the government, repeated the pertinent stipulation to the court.

US Attorney: "[T]he amount [of] cocaine for the applicable sentencing guidelines range is 100 and, 100 to 200 grams."

Court: "The information alleges 198."

US Attorney: "That's right."

Court: "198. That binds it."

US Attorney: "I anticipate that would be the amount for sentencing."

He stated further: "The United States specifically agrees not to rely or attempt to rely upon the amount of kilograms of cocaine seized from, on the date of this offense, which it was, of course, suppressed by order of your honor."

After cautioning defendant about the operation of the Sentencing Guidelines, the district judge said, "Do you realize any stipulations or agreements between you and the government as to what the applicable guidelines are in this matter are not binding on the court if the presentence investigation report or other sources persuade the court of their inaccuracy; Do you understand that?" Defendant acknowledged his understanding.

At the sentencing hearing, the judge invited the parties to comment on whether he should use the kilogram of cocaine as a factor in computing the appropriate guideline range. The Assistant United States Attorney stated that he supported the defendant's opposition to such consideration, "I stipulated the amount was 198 grams and I'm prepared to stick by that stipulation." At a later point in the hearing, the Assistant United States Attorney denied that the government advocated a base level of 26 as specified in the presentence report, but rather agreed with the defendant's position that the proper base level was 18.

After the judge informed the parties that he would consider the additional kilogram, defendant moved to withdraw his plea. The court rejected the request despite counsel's contentions that the defendant had relied on the stipulation of 198 grams, and moreover that the government did not wish to disavow the agreement.

Of course, it is clear that the district judge had the right to reject the stipulation

which the parties had proffered. The question here is whether, the agreement having been disapproved, defendant should have been permitted to withdraw his plea.

Generally speaking, if courts reject stipulations, defendants may not withdraw their pleas, particularly when they have been forewarned. In denying the defendant's motion in this case, the sentencing judge referred to his statement during the plea colloquy that a stipulation "as to what the applicable guidelines are" was not binding on the court.

Federal Rule of Criminal Procedure 11(e)(1) provides that upon a defendant's entry of a guilty plea the government may agree to do any of the following: (a) dismiss other charges, (b) make a recommendation, or agree not to oppose the defendant's request for a particular sentence with the understanding that such a recommendation is not binding on the court, or (c) "agree that a specific sentence is the appropriate disposition of the case." If option (c) is followed, "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed.R. Crim.P. 11(e)(2).

A policy statement issued by the Sentencing Commission, § 6B1.1(c), states that the court should not accept or reject a plea agreement calling for a specific sentence until a presentence report has been prepared and considered. Section 6B1.2(c) provides that the court may accept such an agreement if the recommended sentence is within the applicable guidelines or it departs for a justifiable reason.

In this case the parties had not agreed upon a specific sentence and after cautioning that one would not be determined until after a presentence report had been prepared, the court specifically approved the plea agreement. We need not decide here whether this situation comes within the scope of Federal Rule of Criminal Procedure 11(e)(1)(C). We do not consider Rule 11, or the policy statements by the Sentencing Commission to preclude relief in other instances.

The Supreme Court has recognized the importance of safeguarding the plea bargaining process. In *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), the Court said, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

In *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir.1976), we permitted a defendant to withdraw his plea in a situation where "judged by objective standards" he reasonably had a mistaken impression of the sentence to be imposed and where the prosecutor, despite a promise to take no position, commented unfavorably on the defendant's character at sentencing. *See also United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir.1989) (government conduct breached agreement not to take a position on defendant's sentence); *United States v. Martin*, 788 F.2d 184, 187 (3d Cir.1986) (government failed to fulfill its obligation under the plea agreement to inform sentencing court of defendant's cooperation).

In *Moscahlaidis* we pointed out that a plea agreement "remains contractual in nature and is to be analyzed under contract-law standards." 868 F.2d at 1361. In addition, the "[c]ourts should consider not only contract principles but also ensure that the plea bargaining process is 'attended by safeguards to insure the defendant [receives] what is reasonably due in the circumstances.'" *Id.*

Unlike the cited cases, here the difficulty was not caused by any dereliction on the part of the prosecutor. To the contrary, the Assistant United States Attorney properly reiterated his support of the plea agreement. The record establishes that both parties were taken aback by the court's ruling that the kilogram was to be included in computing the proper guideline range.

Although the ruling was correct, it seems that even the very able district judge had not anticipated the possibility that he would be called upon to decide an issue of

first impression in this circuit. At the time of the plea colloquy, after the stipulation as to the 198 grams was announced, the judge said "that binds it." In cautioning that he would not be bound by any stipulations between the parties as to "what the applicable guidelines are," the judge did not refer to drug quantities. Moreover, in the unique facts of this plea colloquy, it is unlikely that defendant believed the warning included that stipulation.

Federal Rule of Criminal Procedure 32(d) provides that if a motion for withdrawal of a guilty plea is made before sentence is imposed, the court may grant such a request "upon a showing by the defendant of any fair and just reason." Courts have decided that when a plea bargain has been frustrated for various reasons, the defendant is entitled to relief.

In *United States v. Jureidini*, 846 F.2d 964, 965–66 (4th Cir.1988), the prosecution agreed that in exchange for a plea agreement for purposes of parole consideration, the amount of cocaine distributed by the defendant was less than 5 kilograms. The presentence report, however, described a larger quantity and consequently the parole commission reached a decision contrary to that anticipated by the plea agreement. In those circumstances, the Court determined that the defendant was entitled to relief.

In *United States v. Kemper*, 908 F.2d 33 (6th Cir.1990), the parties stipulated that the drug quantity was 99 grams of cocaine, and the government agreed that the sentence would be at the low end of the guidelines. The presentence report, however, stated that the quantity was in fact 102.09 grams and the applicable guideline range was increased to one for an offense involving 100 grams or more. The Court of Appeals construed the plea bargain as coming within Federal Rule of Criminal Procedure 11(e)(1)(C) (an agreement for a specific sentence). Although the Appellate Court decided that the sentencing court properly rejected the agreement based on the erroneous stipulation as to quantity, at that point the defendant should have been given the opportunity to withdraw his plea. *Id.* at 37.

Other cases have similar holdings. *See United States v. Jefferies*, 908 F.2d 1520 (11th Cir.1990) (defendant entitled to relief from plea where stipulation specified the quantity as 13 grams, and court found amount to be 15 kilograms); *United States v. Mandell*, 905 F.2d 970 (6th Cir.1990) (consideration of additional 73 kilograms of marijuana violated agreement that defendant would be sentenced at a base level of 20); *United States v. Silverman*, 889 F.2d 1531 (6th Cir.1989) (case remanded for determination of whether sentencing court's consideration of defendant's conduct in transactions outside the offense of conviction violated spirit and intent of plea agreement).

 The record demonstrates that this is not a case in which a defendant sought to withdraw his plea simply because of disappointment in the sentence imposed. An unexpected computation will generally not serve to breach a bargain, particularly when the plea agreement acknowledged that possibility. Here, however, a legal issue unforeseen by the prosecution, defense and apparently the court itself, frustrated an agreement clearly contemplated by all concerned. The sentence evolved not from a routine computation per se or newly discovered information, but reflected an unexpected change in a critical factor that for all intents and purposes had been settled during the plea colloquy.

We conclude that in the unusual circumstances present here, defendant is entitled to relief. The form that remedy is to take we leave to the district court. As stated in *United States v. Moscahlaidis*, "In this circuit, the rule is to remand the case to the district court for it to determine whether to grant specific performance or allow withdrawal of the plea." 868 F.2d at 1363.

The judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.