UNITED STATES of America,
Plaintiff–Appellee,

v.

David HOOTEN, Defendant–Appellant.

No. 90–8566.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1991.

Rehearing Denied Oct. 15, 1991.

Walter M. Reaves, West, Tex. (Court Appointed), for defendant-appellant.

Michael W. McCrum, LeRoy M. Jahn, John Phinizy, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before KING and DUHÉ, Circuit Judges, and SCHWARTZ, District Judge [1]:

KING, Circuit Judge:

David Hooten appeals his sentence imposed by the district court after he entered a guilty plea to the charge of conspiracy to manufacture amphetamine. He contends that the district court improperly adjusted his sentence contrary to Fed.R.Crim.P. 32(c) and the federal sentencing guidelines, and that the government breached its plea agreement. We remand for resentencing in accordance with this opinion.

## I. BACKGROUND

Hooten became involved in a methamphetamine production scheme after meeting Alan Ray Molloy. Molloy told Hooten he was looking for a place to set up a methamphetamine lab. Hooten agreed to help Molloy find a place to produce methamphetamines. Hooten arranged for Molloy to set up the lab in San Saba, Texas, on property that Sidney Stewardson leased from his father. When Hooten, Molloy, and Edward McDaniels arrived at the prop-

---

1. Senior District Judge of the Eastern District of Louisiana, sitting by designation.

erty, Stewardson directed them to a hunting cabin, where they produced approximately three pounds of methamphetamine. Molloy gave Hooten $1,000 for his assistance and left for Fort Worth. Several days later, on March 11, 1990, Hooten, Molloy, and McDaniels returned to San Saba to make more methamphetamine. This time, they set up the lab in a shed approximately 300 yards behind Stewardson's residence. The next day, law enforcement agents from the DEA, Texas Department of Public Safety, the Lampasas and San Saba Sheriff's offices, and the San Saba Police Department obtained and executed a search warrant on Stewardson's property. The agents found significant quantities of phenylacetone and amphetamine, as well as drug processing equipment, in various locations on the property. In addition, the agents discovered a handgun under a pillow on the back porch of Stewardson's residence. Hooten and others were arrested as they emerged from an unspecified building on the property.

A federal grand jury for the Western District of Texas indicted Hooten on one count of conspiracy to manufacture amphetamine on March 20, 1990. Hooten entered a guilty plea to this charge and submitted to a presentence investigation. In the presentence report (PSR), the probation officer recommended that the court apply U.S.S.G. § 2D1.1(b)(1) in computing Hooten's offense level for sentencing purposes. This section of the sentencing guidelines suggests a two-level increase from the base level offense if either the defendant or a codefendant possessed a dangerous weapon during the commission of a drug offense Hooten objected to the application of this enhancement factor to his case. During the sentencing proceedings on September 25, 1990, the court asked the government to respond to the objection by stating the evidence in support of a finding that Hooten was in possession of a firearm for sentencing purposes. After the government's presentation, the court summarily overruled Hooten's objection and applied the enhancement factor. Hooten also objected to the PSR recommendation that the court deny a downward adjustment for ac-

ceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) because of Hooten's failure to comply with the conditions of his bond. Nevertheless, the court considered the noncompliance and refused to apply this factor to reduce his sentence. This appeal followed.

## II. ANALYSIS

Hooten challenges his sentence on three grounds. First, Hooten argues that the district court increased his offense level for possession of a firearm without making specific findings required under both Fed. R.Crim.P. 32(c)(3)(D) and U.S.S.G. § 2D1.1(b)(1) on the following controverted issues: (1) whether the gun was "present," (2) whether Hooten "possessed" the gun, and (3) whether Hooten could have reasonably foreseen possession of the gun by a co-conspirator. Second, Hooten asserts that the district court impermissibly considered his failure to comply with the conditions of his bond when it refused to find he had accepted responsibility for his criminal conduct. Third, Hooten claims that the government breached its plea agreement by neglecting to inform the court of his cooperation after arrest.

■ We review the district court's action to determine whether the district court was clearly erroneous in imposing a sentence. In addition, we examine de novo the district court's purely legal application of the sentencing guidelines. *United States v. Rodriguez*, 925 F.2d 107, 109 (5th Cir. 1991); *United States v. Suarez*, 911 F.2d 1016, 1018 (5th Cir.1990). We consider each of his challenges separately below.

### A. *Possession of a Dangerous Weapon*
1. Federal Rule of Criminal Procedure 32

■ Federal Rule of Criminal Procedure 32 governs the contents, disclosure, and application of presentence investigations, as well as other information pertinent to the imposition of a guidelines sentence. In *Burns v. United States*, — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the Supreme Court recently reconfirmed that the rule assures the "focused, adversarial de-

velopment of the factual and legal issues relevant to determining the appropriate Guidelines sentence."[2] The rule performs this function by providing the parties with the opportunity to comment on the probation officer's findings and recommendation, as well as on other factors that the court may take into account in sentencing.[3] Of crucial importance to this case, the rule also requires the court either to make specific findings as to all contested facts contained in the PSR that the court finds relevant in sentencing, or determine that those facts will not be considered in sentencing.[4] In this manner, "Rule 32 serves the twin goals of obtaining a fair sentence based on accurate information and obtaining a clear record of the resolution of disputed facts." *United States v. Smith*, 844 F.2d 203, 206 (5th Cir.1988). *See also United States v. Engs*, 884 F.2d 894, 895–96 (5th Cir.1989) (emphasizing the continuing importance of accurate PSR material in assessing parole status).

█ Hooten contested the PSR's conclusion that his sentence should be increased according to the guidelines because "a handgun was found on the back porch of the residence near the shed where the amphetamine was being manufactured." At sentencing, he claimed that he had no knowledge that the gun existed, nor that a gun was involved in the offense. He adds further that the PSR contained no evidence of who owned or exercised control over the gun. Although he brought the fact of knowledge into issue, the district court neglected to make a specific finding on knowledge, nor did it indicate that knowledge of the gun's presence would not be considered in imposing the sentence. The district court also failed to address Hooten's contentions that the gun was not found near him or any of his possessions, and that the residence in which it was found was not his. Further, the PSR contains no evidence of gun ownership or control. The court's summary refusal to ad-

dress Hooten's objections leaves an ambiguous premise for increasing his sentence on this ground. We cannot resolve this ambiguity on review. Such an endeavor "would require precisely the sort of second-guessing Rule 32(c)(3)(D) is designed to prevent." *United States v. Lawal*, 810 F.2d 491, 492–93 (5th Cir.1987). Therefore, we must remand so that the district court can state clearly the basis for its sentencing determination in compliance with the mandate of Rule 32.

### 2. Sentencing Guidelines

█ The sentencing guidelines echo the concern of Fed.R.Crim.P. 32(c)(3)(D) by requiring the court to make factual findings on any disputed issue arising from the PSR, or determine that the disputed information will not affect the sentence. *United States v. Johnson*, 935 F.2d 47, 50–51 (4th Cir.1991). Hooten asserts that the district court did not comply with this requirement because it failed to explain its decision to overrule his objection to the PSR's allegation that he possessed the gun pursuant to § 2D1.1(b)(1) of the sentencing guidelines.

Section 2D1.1(b)(1) allows for a two-level increase in the base offense level "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense." The commentary to this guideline explains that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."[5] Its inclusion as an enhancement factor "reflects the increased danger of violence when drug traffickers possess weapons."[6]

█ Courts have developed a standard inquiry to determine whether § 2D1.1(b)(1) applies to a particular case. The government must prove weapon possession by a preponderance of the evidence before the court can apply this factor to increase a sentence. *U.S. v. Aguilera–Zapata*, 901

---

**2.** *Id.* 111 S.Ct. at 2184.

**3.** Fed.R.Crim.P. 32(a)(1).

**4.** Fed.R.Crim.P. 32(c)(3)(D).

**5.** U.S.S.G. § 2D1.1 comment (n.3).

**6.** *Id.*

F.2d 1209, 1215 (5th Cir.1990). The government can prove possession in two ways. First, the government can prove that the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. *Suarez,* 911 F.2d at 1018. Generally, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. *See, e.g., United States v. McKeever,* 906 F.2d 129, 134 (5th Cir.1990) (possession found because house where guns and drug processing materials were stored became part of the situs of the offense); *United States v. Vasquez,* 874 F.2d 250, 251 (5th Cir.1989) (no possession where evidence failed to show sufficient connection between gun owned by defendant and stored in his home and purchase of drugs made several miles away), *cert. denied sub nom. Newman v. United States,* —— U.S. ——, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991); *United States v. Otero,* 868 F.2d 1412, 1414 (5th Cir.1989) (finding possession where gun was present in van used to transport cocaine despite absence of weapons in motel room where deal took place).

Alternatively, when another individual involved in the commission of an offense possessed the weapon, the government must show that the defendant could have reasonably foreseen that possession. This requirement derives from U.S.S.G. § 1B1.3(a)(1), which renders a defendant accountable for any foreseeable act by a codefendant taken "in furtherance of the execution of [a] jointly undertaken criminal activity." The sentencing court may infer foreseeability from the coparticipant's knowing possession of the weapon. *Aguilera–Zapata,* 901 F.2d at 1215–16. Other circumstances may also give rise to an inference of foreseeability. *Id.* at 1216 n. 5.

■ The district court never addressed the question of who owned the pistol. Instead of making such a finding, the court only listened to the government's response to Hooten's objection and overruled the objection without explanation. In *United States v. Underwood,* 938 F.2d 1086 (10th Cir.1991), the Tenth Circuit recently considered a situation where the facts underlying a § 2D1.1(b)(1) enhancement were in dispute. The trial court in that case referred only to the accuracy of the PSR and the applicable guidelines range when it imposed the adjusted sentence. In remanding the case for resentencing, the appellate court declared that, "[a]t a minimum, the [trial] court must make a finding that the requirements for the [guidelines] adjustment have been satisfied." [7]

Like the Tenth Circuit in *Underwood,* we cannot speculate as to what the district court would have found based on the arguments presented. *See United States v. Melton,* 930 F.2d 1096, 1099 (5th Cir.1991) (declaring that "we cannot perform the appellate function" unless the sentencing court articulates the factual basis for an adjustment). *Cf. Lawal,* 810 F.2d at 492–93 (observing that Fed.R.Crim.P. 32 requires specific factfinding precisely to avoid this type of inquiry). Here, the district court did not make an explicit determination that the PSR was accurate, nor did it determine whether the government met its burden of proof. As a result, we must remand the case so that the court can comply with the guidelines requirements when resentencing Hooten. Specifically, we instruct the court to make a finding as to whether Hooten personally possessed the pistol or, if the court finds that a co-conspirator possessed the gun, whether Hooten could have reasonably foreseen that possession.

### B. *Acceptance of Responsibility*

■ Hooten argues that the district court erred in refusing to grant him a two level reduction of his base offense level for acceptance of responsibility pursuant to § 3E1.1 of the sentencing guidelines. He asserts that the court improperly considered his failure to comply with the condi-

---

7. *Underwood,* 938 F.2d at 1091.

tions of his bond as a basis for refusing the adjustment. We accord great deference to the district court's determination of this issue, since it is in a unique position to evaluate a defendant's acceptance of responsibility. *See* U.S.S.G. § 3E1.1 comment (n.5); *United States v. Roberson,* 872 F.2d 597, 610 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

Hooten relies on *United States v. George,* 911 F.2d 1028 (5th Cir.1991), to support his contention that U.S.S.G. § 3E1.1 does not contemplate the noncompliance with the conditions of a bond as an indication of the defendant's failure to accept responsibility for criminal conduct. Although Hooten correctly reads *George* to support this narrow statement, his extension of it would create an absurd result. The commentary to § 3E1.1 explicitly states that its enumeration of factors relevant to determining whether a defendant has accepted responsibility for criminal conduct is not exhaustive.[8] In addition, the commentary implies that a defendant's failure to comply with conditions of a bond could be highly relevant to assessing the sincerity of the defendant's contrition.[9] Therefore, contrary to Hooten's assertion, the guidelines permit, rather than bar, the sentencing court's consideration of relevant factors beyond those enumerated in the guideline commentary.

■ Hooten also urges that the sentencing court should be limited to considering only a defendant's criminal activity while on bond in refusing to reduce a sentence on this ground. However, he cannot seriously contend that the term "inconsist-

ent conduct" requires such a restrictive reading. Based on the district court's consideration of both positive[10] and negative[11] factors in determining whether Hooten accepted responsibility for his criminal conduct, we do not find that it erred in concluding that Hooten did not demonstrate an acceptance of responsibility. For this reason, we affirm the district court's decision on this issue.

## C. *The Plea Agreement*

■ Among the terms of Hooten's plea bargain, the government agreed to inform the court of Hooten's cooperation. Hooten claims that the government breached this agreement because it failed to declare the extent of Hooten's cooperation at the sentencing hearing. He asserts that this breach deprived him of having the court be apprised of the details of his cooperation prior to sentencing.

Hooten points to *United States v. Brody,* 808 F.2d 944 (2d Cir.1986), *United States v. Martin,* 788 F.2d 184 (3d Cir.1986), and *United States v. Williams,* 656 F.2d 357 (8th Cir.1981) as support for his argument. He correctly states that all three cases hold that the government's failure to advise the court of a defendant's cooperation pursuant to a plea bargain constitutes a breach of that agreement. *See Brody,* 808 F.2d at 947; *Martin,* 788 F.2d at 187; *Williams,* 656 F.2d at 359. However, the facts of these cases do not necessarily square with Hooten's situation. In these cases, the government's failure to inform the court of the defendants' cooperation deprived the court of information that might be relevant to a sentencing determination.[12] Here,

---

**8.** *See* U.S.S.G. § 3E1.1 comment (n.1).

**9.** *See* U.S.S.G.. § 3E1.1 comment (n.3) (explaining that "conduct of the defendant that is inconsistent with ... acceptance of responsibility" may outweigh entry of a guilty plea and admission of involvement in determining acceptance of responsibility for criminal conduct.

**10.** The record shows that the district court considered the fact that Hooten made a voluntary and truthful admission to his involvement in the charged offense at his initial appearance.

**11.** The record indicates that Hooten failed to reside at the location specified in his bond, did

not comply with curfew restrictions, and did not report to pretrial services as required under the conditions of his bond.

**12.** In *Brody,* the sentencing court did not know that the defendant cooperated with the government by giving the government the names of two individuals engaged in automobile insurance fraud. 808 F.2d at 947. In *Martin,* the court sentenced the defendant without being advised of the defendant's cooperation as a state witness against his co-defendant. 788 F.2d at 186. In *Williams,* the court was unaware that the defendant had cooperated by speaking with the FBI and testifying before the grand jury.

Hooten makes no claim that the court was unaware of any important aspect of his cooperation. In fact, Hooten concedes that the court was generally aware that Hooten had cooperated with the government. The extent of Hooten's cooperation was to make a voluntary and truthful admission to the crime charged, a fact made known to the court and confirmed by the government at the sentencing trial. Although the government did not take the initiative to bring up Hooten's cooperation, we do not find that its actions were tantamount to a breach of the plea agreement.

 Even if we found that the government had breached the agreement, "[a] breach ... does not automatically require resentencing." *Brody*, 808 F.2d at 948. Since the court was informed of the general extent of Hooten's cooperation with the government at the time of sentencing, this case clearly does not present a situation in which the government's failure to act in a more affirmative manner violated the essence of the plea agreement so as to require resentencing. *See id.* Because we find that the government did not breach the plea agreement, we refuse to order resentencing on this ground.

## III. CONCLUSION

Hooten's conviction is affirmed. However, for the above reasons, we remand this case to the district court to make the required findings of fact relevant to the sentence imposed.

Conviction AFFIRMED; case REMANDED for further proceedings consistent with this opinion.